**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PETER DAVIS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **14-1490** |
| **CORIZON HEALTH, INC., et al,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Stengel, J.                                                      **February 9, 2015**

Peter Davis is a prisoner at SCI-Coal Township. He brings this civil action against the Commonwealth of Pennsylvania, the City of Philadelphia, Corizon Health, Inc., and various state, city and Corizon employees. All defendants move to dismiss the amended complaint. For the reasons that follow, I will grant defendants' motions in part.

**I        Background**

Peter Davis sues 30 defendants alleging violations of his civil rights, medical malpractice and other related claims. Starting in November 2010 until the present time, Mr. Davis has been in custody at various correctional institutions across Pennsylvania. Am. Compl., doc. no. 36, ¶¶ 41 and 113. The defendants in this action are the Commonwealth of Pennsylvania and City of Philadelphia who operate the prisons; the state and municipal employees who manage and/or work at the prison; as well as Corizon Health, Inc. and its employees who provide health care services to prison inmates pursuant to a contract with the city and state. Where appropriate, I will refer to the

defendants in three groups according to their employment:[1] 1.) the Philadelphia

defendants,[2] 2.) the Commonwealth defendants[3] and 3.) the Corizon defendants.[4]

Mr. Davis was initially detained at a prison in Philadelphia. Id. ¶ 41. Corizon

defendants within the Philadelphia Prison System examined Mr. Davis and tested him for

HIV. Id. ¶¶ 44 and 46. Mr. Davis is HIV negative. Id. ¶ 44. However, the Corizon

defendants comingled Mr. Davis's file with other prisoners' medical records. Id. ¶ 50. As

a result, Mr. Davis's file incorrectly indicated that he was HIV positive.[5] See ¶ 50, 55 and

56. Mr. Davis was transferred to SCI-Graterford on March 5 where, relying on the

erroneous HIV diagnosis, Corizon and Commonwealth defendants began administering

HIV medication to Mr. Davis. Id. ¶¶ 55 - 57. While at SCI-Graterford, Mr. Davis was

unaware he was taking HIV medication. See Id. ¶¶ 80 – 82, 112.

On March 15, Mr. Davis was transferred to SCI-Camp Hill. Id. ¶ 79. When he

arrived at the SCI-Camp Hill, he saw the HIV medication removed from the packaging

---

[1] The amended complaint alleges that Dan Lee, Marianne Edwards, Dr. Nicholas Scharff, Lynn Wolfgang and Nancy Grimes are employed by Corizon; however, these defendants are represented by the Pennsylvania Attorney General. I will group these defendants with the Pennsylvania defendants.

[2] The Philadelphia defendants are the City of Philadelphia, Louis Giorla (Commissioner of the Philadelphia Prison System) and Bruce Herdman (Chief Medical Officer of the Philadelphia Prison System).

[3] The Pennsylvania Defendants are the Commonwealth of Pennsylvania, John Wetzel (Secretary of the Department of Corrections), Christopher Oppman (DOC Director of Inmate Healthcare), Michael Wenerowicz (Warden of SCI-Garterford), Joseph Korszniak (DOC Regional Medical Director for SCI-Graterford), Dan Lee (Nurse at SCI-Garterford), Laurel Harry (Warden of SCI-Camp Hill), Marianne Edwards (Nurse at SCI-Camp Hill), Vincent Mooney (Warden of SCI-Coal Township), Dr. Nicholas Scharff (Doctor at SCI-Coal Township), Lynn Wolfgang (Nurse at SCI-Coal Township) and Nancy Grimes (Nurse at SCI-Coal Township).

[4] The Corizon defendants are Corizon Health, Inc., Dr.Eke Kalu (Regional Medical Director), Dr. Richard Stefanic (Doctor at SCI- Graterford), Dr. Bruce Blatt (Doctor at SCI-Graterford), Raymond Machak (Physician Assistant at SCI-Graterford), Kimberly Tobin (Nurse at SCI-Graterford), Dr. Peter Binnion (Doctor at SCI-Camp Hill), Dr. Paul Noel (Doctor at Camp Hill), Shelia McGinnis (Physician Assistant at Camp Hill), Dr. Vivian Gandy (Doctor at SCI-Camp Hill), Michael Spaeder (Physician Assistant at SCI-Camp Hill), Dr. Theodor Voorstad (Doctor at SCI-Camp Hill), Brian Davis (Physician SCI-Coal Township) and Stanley Stanish (Doctor at SCI-Coal Township).

[5] I believe this is the inference Mr. Davis wants me to make, but the pleading is not very clear.

2

and realized that he was being treated for HIV. Id. ¶¶ 80 and 81. Mr. Davis refused to take the HIV medication and protested that he was HIV negative. Id. ¶¶ 82, 87, 89, 91, 92 93. As a result, the Corizon and Commonwealth defendant's placed Mr. Davis in "D/C Med Hold," i.e., disciplinary custody. Id. ¶¶ 83 and 93. Defendants conducted further blood tests to confirm Mr. Davis's HIV status and continued to administer HIV medications.[6] Id. ¶¶ 85 – 88, 90 and 94. Between March 16 and April 13, BioReference Laboratories sent defendants multiple reports stating that Mr. Davis was HIV negative. Id. ¶¶ 95, 97, 99 and 105. However, defendants continued to administer HIV medication. Id. ¶¶ 96, 98, 100, 104, 106 and 109.

On April 19, Mr. Davis was transferred to SCI-Coal Township. Id. ¶ 113. Prior to departing SCI-Camp Hill, defendant Spaeder told Mr. Davis "'Philadelphia County screwed up [Mr. Davis's] medications' and he should 'sue their asses.'" Id. ¶ 111. Upon arrival at SCI-Coal Township, Mr. Davis was placed in disciplinary custody. Id. ¶ 114. Despite another confirmation from BioReference Laboratories that Mr. Davis was HIV negative, the Corizon and Commonwealth defendants at SCI-Coal Township continued to administer HIV medication. Id. ¶¶ 117, 122 and 123. Mr. Davis does not plead when defendants stopped administering the HIV medication.

Mr. Davis avers that the HIV medications caused severe emotional and physical side effects.[7] Id. ¶ 65. He also believes the HIV medication interfered with the

---

[6] To be precise, the amended complaint alleges, "Even though Mr. Davis refused to take yet another HIV test, Defendant Edwards 'per standing order from Dr. Binnion' and, without his consent, recklessly assaulted Mr. Davis and took his blood by stabbing a needle into his veins for another HIV test." Am. Compl. ¶ 86.

[7] These side effects included depression, hyperglycemia, diarrhea, dizziness, fatigue, headaches, nausea, vomiting, pain, nerve problems and skin rashes. Am. Compl. 65.

effectiveness of the medications he was taking for other chronic illnesses. Id. ¶ 64. Mr. Davis maintains that his HIV status was made known to the prison populations at each state correctional institution. Id. ¶ 128. As a result, the correctional officers and inmates harassed, embarrassed and isolated Mr. Davis causing him severe emotional distress. Id.

Mr. Davis filed his complaint on March 12, 2014. Doc. no. 1. Mr. Davis filed his first amended complaint, as a matter of course, when defendants moved to dismiss. The amended complaint alleges that the defendants have violated Mr. Davis's rights under the Eighth Amendment and the American's with Disabilities Act (ADA). He also asserts various state law tort claims. Defendants have moved to dismiss the amended complaint. Doc. nos. 40 (Philadelphia defendants), 53 (Corizon defendants), 71 (Pennsylvania defendants). I have dismissed all claims against the Commonwealth of Pennsylvania, doc. no. 88,[8] and I have denied Mr. Davis's motion for leave to file a second amended complaint. Doc. no. 86.[9]

## II.    Standard of Review

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

---

[8] I dismissed the Commonwealth of Pennsylvania finding that Congress has not abrogated the Commonwealth's Eleventh Amendment immunity for state law tort claims nor Eighth Amendment violations. While the state could be sued under the ADA, I concluded that Mr. Davis had no viable cause of action.

[9] Mr. Davis sought leave to file an amended complaint to join the Department of Corrections as a party, to add a count for Invasion of Medical Privacy and to seek a preliminary injunction. I denied the motion because the amendments would have been futile.

47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must

provide "more than labels and conclusions" or "a formulaic recitation of the elements of a

cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). Id. at 1965;

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint

by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted.

In deciding a motion to dismiss under Rule 12(b)(6), I may consider "the

allegations contained in the complaint, exhibits attached to the complaint and matters of

public record." Pension Ben.Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192,

1196 (3d Cir. 1993). The court is required to accept as true all of the factual allegations in

the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and all reasonable inferences

permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d

Cir. 2007), viewing them in the light most favorable to the plaintiff. Kanter v. Barella,

489 F.3d 170, 177 (3d Cir. 2007). The court is not, however, "compelled to accept

unsupported conclusions and unwarranted inferences or a legal conclusion couched as a

factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (quotations

and citations omitted). If the facts alleged are sufficient to "raise a right to relief above

the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint

will survive a motion to dismiss. Bell Atlantic Corp., 127 S. Ct. at 1965, 1974; Victaulic

Co. v. Tieman, 499 F.3d 227, 234-35 (3d Cir. 2007).

Since Mr. Davis asserts an Eighth Amendment violation and an ADA claim, I

have federal question jurisdiction. 28 U.S.C. § 1331. I have supplemental jurisdiction

over the pendent state law claims. § 1367. When considering the motions to dismiss the state law counts, I must apply Pennsylvania law as interpreted by the Pennsylvania Supreme Court. McKenna v. Pac. Rail Serv., 32 F.3d 820, 825 (3d Cir. 1994) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)) ("In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court."); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 701 (3d Cir. 1993) (applying Erie to claims under supplemental jurisdiction). When the Supreme Court has not spoken on the issue, I refer to the decisions of the Pennsylvania Superior Court and Pennsylvania Commonwealth Court to predict how the high court would rule. See McKenna, 32 F.3d at 825. Additionally, I will follow Third Circuit's interpretation of Pennsylvania law unless it is inconsistent with a subsequent holding of the state Supreme or intermediate appellate courts. Aceto v. Zurich Ins. Co., 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Pennsylvania Supreme Court has not ruled upon that legal question."); Largoza v. Gen. Elec. Co., 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this court is bound by a decision of the Third Circuit predicating Pennsylvania law unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred.").

**III     Discussion**

**A.  Counts 1 and 2 – Negligent Supervision**

I will address Counts 1 and 2 together as each implicates sovereign immunity. Mr. Davis claims that the Philadelphia and Commonwealth defendants negligently supervised the Corizon defendants who worked in the city and state correctional institutions.[10] Count 1 asserts the allegations against the Philadelphia defendants. Count 2 takes aim at the Pennsylvania defendants not involved in direct patient care.[11]

Pennsylvania state and municipal employees are immune from suit except where expressly waived by the General Assembly. 1 Pa.C.S. § 2310; 42 Pa.C.S. §§ 8522, 8542 and 8545. I will dismiss Count 2 with prejudice because Commonwealth parties[12] are not liable for negligent supervision. *See* 42 Pa.C.S. § 8522 (not exempting negligent supervision); Clark v. Southeastern Pennsylvania Transp. Auth., 691 A.2d 988, 992 (Pa. Commw. Ct. 1997) (holding that a claim of negligent supervision does not fall within any of the exceptions to sovereign immunity). On the other hand, a municipal employee may be liable for negligent supervision if the plaintiff pleads willful misconduct. *See* 42

---

[10] Mr. Davis alleges defendants failed to monitor contractors, failed to take disciplinary action, and failed to ensure contractors followed proper procedures. Counts 1 and 2 also assert that defendants, "failed to provide prompt and adequate healthcare for plaintiff's serious medical conditions[, and]… acted with callous indifference to Mr. Davis' serious medical needs…." Am. Compl. ¶¶ 139 a, 139g 143a and 143g. To the extent Mr. Davis is pleading medical malpractice or an Eighth Amendment violation, I will dismiss the claims as duplicative of Counts 4 and 7. *See* Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626 (E.D. Pa. 2010) (recognizing the court's authority to dismiss duplicative counts).

[11] Specifically, Count 2 targets Mr. Wetzel, Mr. Oppman, Mr. Wenerowicz, Dr. Korszniak, Ms. Harry and Mr. Mooney. Dr. Korszniak is regional medical director for the Department of Corrections. According to the complaint he acted in a supervisory capacity. He was not involved in direct patient care.

[12] A Commonwealth party is a "Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501. Mr. Davis alleges that Mr. Wetzel, Mr. Oppman, Mr. Wenerowicz, Dr. Korszniak, Ms. Harry and Mr. Mooney are Commonwealth parties because they are employed by the Pennsylvania Department of Correction.

Pa.C.S. § 8542 (not exempting negligent supervision from immunity); Hernandez v. York

Cnty., 288 F. App'x 781, 783 (3d Cir. 2008) (affirming district court's finding that the

Political Subdivision Tort Claims Act does not waive immunity for negligent supervision

claims without proof of willful misconduct). Mr. Davis does not allege any specific acts

by the Philadelphia defendants, let alone willful misconduct. I will dismiss Count 1 with

prejudice.

### B. Count 3 – Corporate Negligence against Corizon, Inc.

Mr. Davis seeks to hold defendant Corizon Health, Inc. liable under a theory of

corporate negligence. Under the doctrine of corporate negligence, a healthcare provider

has four general duties: "(1) a duty to use reasonable care in the maintenance of safe and

adequate facilities and equipment…; (2) a duty to select and retain only competent

physicians …; (3) a duty to oversee all persons who practice medicine within its walls as

to patient care…; and (4) a duty to formulate, adopt and enforce adequate rules and

policies to ensure quality care for the patients…." Thompson v. Nason Hosp., 591 A.2d

703, 707 (Pa. 1991). To establish a prima facie case of corporate negligence, Mr. Davis

must plausibly show 1.) Corizon's actions deviated from an accepted medical standard;

2.) Corizon had actual or constructive knowledge of the defect or procedures that created

the harm; and 3.) Corizon's negligence was a substantial factor in causing the harm. *See*

Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). A corporation, like Corizon, which

provides the exclusive and comprehensive medical services to prison inmates may be

held liable under a theory of corporate negligence. *See, e.g.,* Fox v. Horn, 98-CV-5279,

2000 WL 49374, at *8 (E.D. Pa. Jan. 21, 2000) (predicting that the Pennsylvania

Supreme Court would extend the doctrine of corporate negligence to state prison healthcare providers).

Corizon moves to dismiss Count 3 because the allegations sound in vicarious liability, not corporate negligence. Corizon is correct that it cannot be held liable for the negligent acts of its agents under a theory of corporate negligence. Moser v. Heistand, 681 A.2d 1322, 1326 (Pa. 1996) ("The cause of action arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees."). Plaintiff's counsel clearly does not understand the distinction between vicarious liability and corporate liability. *See* Pl.'s Resp. Br., doc. no. 93, 18 ("As a corporation responsible for providing health care to inmates, under the doctrine of corporate liability, Defendant CORIZON DOC is vicariously liability [sic] for its employees' negligence.").[13] Nonetheless, several of plaintiff's claims are for failure to supervise and retain competent medical staff which are cognizable as corporate negligence. *See* Am. Compl. ¶147 f, g, h, i, k, m. I will grant Corizon's motion and dismiss Count 3 without prejudice. Mr. Davis may file a second amended complaint asserting corporate negligence without reference to vicarious liability.

### C. Count 4 – Medical Malpractice

Commonwealth defendants Joseph Korszniak, Dan Lee, Marianne Edwards, Lynn Wolfgang and Nancy Grimes move to dismiss Count 4, which accuses defendants of medical malpractice, because Mr. Davis failed to file a certificate of merit within 60 days

---

[13] Mr. Davis's citation to Scampone v. Crane Health Care Company, 11 A.3d 967, 990 (Pa.Super. 2010) is to no avail. Counsel should re-read Scampone and take note of the careful distinction the court makes between plaintiff's vicarious liability claim and plaintiff's corporate negligence claim.

of the complaint. Pa.R.C.P. 1042.3.[14] Pennsylvania's requirement that a medical malpractice plaintiff file a certificate of merit "is substantive state law that must be applied by the federal district courts." <u>Booker v. United States</u>, 366 F. App'x 425, 426 (3d Cir. 2010) (citing <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158–61 (3d Cir.2000)). If plaintiff fails to file a certificate of merit, defense counsel may serve on plaintiff's counsel a notice of intent to enter judgment of *non pros*. Pa.R.C.P 1042.6. If plaintiff does not file a certificate of merit within the next 30 days, the prothonotary may enter judgment of *non pros* upon the praecipe of defendant. Pa.R.C.P. 1042.7.

The Federal Rules of Civil Procedure do not provide for a notice of intent to enter judgment of *non pros*. Accordingly, I will construe the Commonwealth's June 5, 2014 motion to dismiss as the notice of intent. *See* <u>Fabian v. United States</u>, 13-CV-1656, 2013 WL 5525647, at *2 (E.D. Pa. Oct. 7, 2013) ("Here, the Court construes the Government's September 13, 2013 Motion to Dismiss as notice of its intent to file a praecipe for entry of a judgment of *non pros* rather than the praecipe itself."). On June 5, 2014, Mr. Davis filed a certification that "expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim…." Certificate of Merit, doc. no 72, 1. This certification complies with Pennsylvania Rule of Civil Procedure 1042.3(a)(3).[15] Since

---

[14] In an action based on the malpractice of a licensed professional, plaintiff's counsel shall file a certificate of merit stating that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care … fell outside acceptable professional standards…, or expert testimony of an appropriate licensed professional is unnecessary for the prosecution of the claim." Pa.R.C.P. 1042.3 (a)(1), (3).

[15] As a result, Mr. Davis "is bound by the certification and, subsequently, the trial court shall preclude the plaintiff from presenting testimony by an expert on the questions of standard of care and causation." Note to Pa.R.C.P. 1042.3(a)(3).

Mr. Davis filed the certification within 30 days of the Commonwealth's motion, dismissal for lack of prosecution is inappropriate.[16]

### D.  Count 5 – Medical Battery

Mr. Davis insists that defendants Wolfgang, Edwards, Binnion and Scharff committed medical battery by using a needle to draw his blood for an HIV test. A medical battery is an unlawful touching which occurs during surgery without the patient's informed consent. Montgomery v. Bazaz-Sehgal, 798 A.2d 742, 749 (Pa. 2002) ("…there need be no physical injury, but only some contact; the matter of permission goes to the quality of the contact, and consent to being so touched is a defense."); Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012) ("[S]urgery performed without the patient's consent constitutes an intentional and offensive touching, and satisfies the elements of battery."). The critical element of a medical battery is the lack of informed consent. It follows then that a claim for medical battery cannot lie where the medical procedure did not require the patient's informed consent.

---

[16] The Corizon defendants take issue with the amended complaint's reliance on Pennsylvania's professional licensure regulations to plead a cause of action for medical malpractice, but I am unconvinced that Mr. Davis's medical malpractice claim is solely premised on the regulatory violations. Rather, Mr. Davis has stated a claim for malpractice by alleging that the defendants misdiagnosed him as HIV positive and placed him on an inappropriate course of treatment which caused him harm.

The Corizon and Philadelphia defendants also argue that the statute of limitations bars any claims accruing before March 11, 2012. A two year statute of limitations applies to civil rights and medical malpractice claims. Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d Cir. 1985) (§1983) Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991) (medical malpractice). Essentially, defendants argue that they cannot be held liable for the file mix up which occurred while Mr. Davis was in custody in Philadelphia. Mr. Davis alleges that he was unaware of the file mix-up until he saw HIV medication on March 15, 2012. Thus, the discovery rule may preserve his claim. Bohus, 950 F.2d at 924 (citing Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. 1984) (Under the Pennsylvania discovery rule, "the statute of limitations begins to run as soon as 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct'").

The Pennsylvania Supreme Court has established that doctors need not obtain a patient's informed consent prior to non-surgical procedures. Morgan v. MacPhail, 704 A.2d 617, 619 (1997).[17] The court has defined surgical procedures as those involving excision, incision or the use of surgical instruments.[18] Id. Using this definition, the Pennsylvania Supreme Court has found that the intravenous administration of medication is not a surgical procedure and does not require the patient's informed consent. Id. (citing Wu v. Spence, 605 A.2d 395 (Pa. Super. 1992) (informed consent is not required before injecting a local anesthetic into the area around the ribs). Drawing blood from a patient through the use of a needle is closely analogous to the use of intravenous medication and is non-surgical. See Id. at 169-20 (needles are not surgical instruments). Defendants did not need Mr. Davis's informed consent to conduct this non-surgical procedure. No matter the amount of hyperbole Mr. Davis uses to describe the blood draw, see supra, note 5, it is simply not the type of assault which can give rise to a cause of action for medical battery. I will dismiss Count 5 with prejudice.

---

[17] "The rationale underlying requiring informed consent for a surgical or operative procedure and not requiring informed consent for a non-surgical procedure is that the performance of a surgical procedure upon a patient without his consent constitutes a technical assault or a battery because the patient is typically unconscious and unable to object…. It is the invasive nature of the surgical or operative procedure involving a surgical cut and the use of surgical instruments that gives rise to the need to inform the patient of risks prior to surgery. Id. Neither of the procedures performed in the instant appeals were invasive in nature as both involved the injection of medication which does not rise to the same level of bodily invasion as surgery." Morgan v. MacPhail, 704 A.2d 617, 620 (Pa. 1997)

[18] "'[O]perate' is defined in Taber's Cyclopedic Medical Dictionary 1256 (16th ed.1989) as '[t]o perform an excision or incision, or to make a suture on the body or any of its organs to restore health.' 'Surgery' is defined in Black's Law Dictionary 1442 (6th ed.1990) as 'that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries.' 'Operation' is defined as "an act or succession of acts performed upon the body of a patient, for his relief or restoration to normal conditions, by the use of surgical instruments as distinguished from therapeutic treatment by the administration of drugs or other remedial measures.' Id. at 1092…. The procedures involved in the instant appeals do not fall within the definition of surgical or operative procedures because neither involved an excision or incision or the use of surgical instruments." Morgan, 704 A.2d at 619.

### E.  Count 6 – Americans with Disabilities Act

As I discussed in denying Mr. Davis's motion for leave to amend, doc. no. 86, 3, I will dismiss Count 6 with prejudice. To prevail under Title II of the ADA,[19] Mr. Davis must prove that he "(1) has a disability; (2) was otherwise qualified to participate in a [prison] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir.2009). Mr. Davis contends that all defendants violated the ADA when prison officials treated Mr. Davis for HIV even though he was not HIV positive. These allegations fail to identify a prison program in which Mr. Davis was qualified to participate. Nor do these facts plausibly suggest that any defendant prevented Mr. Davis from enjoying the benefits of any prison program. Mr. Davis concedes that Count 6 should be dismissed with prejudice. Pl.'s Br. in Opposition, doc. no. 93, 2 n. 2.

### F.  Count 7 – Eighth Amendment Cruel and Unusual Punishment

Mr. Davis's Eighth Amendment claim is also without merit. In order to plausibly plead constitutionally inadequate medical care as a prisoner, Mr. Davis must allege that defendants were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Thus, to successfully state a claim, a plaintiff must allege that the

---

[19] Although Mr. Davis does not clearly plead under what provision of the ADA he seeks relief, state prisons are covered under Title II. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998).

defendant acted with a sufficiently culpable state of mind, and must in some way 'connect[ ] his factual allegations to the alleged mental state' of the defendant." Glenn v. Barua, 252 F. App'x 493, 497 (3d Cir. 2007) (citing Wilson v. Seiter, 501 U.S. 294, 298, (1991) and Spruill v. Gillis, 372 F.3d 218, 237 (3d Cir.2004)). Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 105-06.

Here, Mr. Davis merely pleads a medical malpractice case without any allegations supporting an inference of deliberate indifference. Id. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."). Mr. Davis maintains that the Pennsylvania and Corizon defendants improperly treated him for HIV based on a misdiagnosis. While I am concerned by allegations that defendants continued to treat Mr. Davis for HIV following multiple negative blood tests, there are no allegations, other than conclusions of law, that defendants pursued this course of treatment in deliberate indifference to Mr. Davis's serious medical needs. Rather, this appears to be a prudent course of treatment based on a legitimate, although mistaken, concern that Mr. Davis was infected with a deadly and contagious disease.

Mr. Davis cites to several authorities which are easily distinguishable from this case. There is no suggestion in the complaint that defendants treated Mr. Davis for HIV for punitive purposes. *Contra* Glenn v. Barua, 252 F. App'x 493, 498 (3d Cir. 2007). Mr.

Davis does not allege that prison officials knew that the HIV treatment caused him pain or would result in permanent injury. *Contra* White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (Doctor intentionally burned patients with matches and did not prescribe medications which put patients at risk of developing an ulcer); Mutschler v. SCI Albion CHCA Health Care, 445 F. App'x 617, 620-21 (3d Cir. 2011) (doctor inserted latex catheter despite knowledge that patient had a latex allergy); Thomas v. Varano, 532 F. App'x 142, 147 (3d Cir. 2013) (prison doctor intentionally reduced cancer patients pain medication to punish patient). I note that "Mr. Davis reasonably believes and avers that the … HIV medications interfered with the effectiveness of the medications that he was taking for his chronic illnesses." Am. Compl. ¶ 64. I cannot infer from this allegation that defendants treated Mr. Davis for HIV knowing of this risk and with the intent to cause Mr. Davis pain or permanent injury.

In the alternative, Mr. Davis asserts that he was placed in disciplinary custody in retaliation for his refusal to take the HIV medication. A prisoner alleging retaliation for asserting his civil rights must plausibly demonstrate that, 1.) "the conduct which led to the alleged retaliation was constitutionally protected;" 2.) "he suffered some 'adverse action' at the hands of prison officials;" and 3.) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Mr. Davis has a liberty interest to refuse unnecessary HIV medication. Washington v. Harper, 494 U.S. 210, 221-22 (1990) ("[R]espondent possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."). Mr.

15

Davis alleges that defendants took an adverse action when they placed him in disciplinary custody. *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (placement in administrative segregation may amount to an adverse action depending on the facts of a particular case). I will infer a causal link from the temporal proximity between Mr. Davis's refusal to take his HIV medication and his placement in disciplinary custody. *See* Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989) (temporal proximity, without more, may create an inference of causation if the timing is unusually suggestive). On these facts, it would appear that Mr. Davis has a viable retaliation claim.

However, Mr. Davis's charge of retaliation cannot save Count 7. Civil Rights retaliation is a cause of action distinct from an Eighth Amendment violation. The elements of retaliation do not, on their own, establish a cause of action under the Eight Amendment. *Compare* Rauser, 241 F.3d at 333 *with* Estelle, 429 U.S. at 104. The fact that Mr. Davis was placed in administrative segregation when he refused to take HIV medication does not plausibly support a theory that defendants were deliberately indifferent to a serious medical condition. I will dismiss Mr. Davis's Eighth Amendment claim with prejudice.

Dismissal of the Eighth Amendment violation does not address a potentially viable retaliation claim. While the facts supporting retaliation are present in the complaint, Mr. Davis failed to plead the elements of retaliation and why the facts entitle him to relief under this theory. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count or defense."). Indeed, the pleading is so poor that neither I nor a single defendant

identified the retaliation claim until plaintiff responded to the Commonwealth's motion to dismiss. [20] Doc. no. 92, 17. While Mr. Davis has not moved for leave to add a count for retaliation, I will allow him to file an amended complaint seeking damages for the alleged retaliation because our rules favor decisions on the merits over dismissal on the technicalities of pleading. Foman v. Davis, 371 U.S. 178, 182 (1962). [21] Accordingly, Count 7 is dismissed without prejudice.

In pleading retaliation, Mr. Davis's second amended complaint must be tailored to viable defendants. A retaliation claim is actionable under 42 U.S.C. §1983. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). As the retaliation occurred within the state prison system only, it is implausible that any of the Philadelphia defendants were personally involved in the retaliation. Thus, Mr. Davis may not sue the Philadelphia defendants on a theory of retaliation in the second amended complaint.[22]

---

[20] The Commonwealth has requested leave to file a reply brief. I will grant that motion, but I do not find the reply persuasive. The Commonwealth seems to believe that a retaliation claim must be premised on the First Amendment. While retaliation claims usually arise in the First Amendment context, the language of Rauser is much broader. 241 F.3d at 333 ("As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."). Accordingly, I will allow plaintiff to file an amended complaint to include a retaliation claim. Defendants may renew their motions to dismiss if appropriate.

[21] It is frustrating that plaintiff's counsel has not identified the pleading deficiency. I would have granted the motion for leave to amend had counsel argued retaliation, but the proposed second amended complaint did not add a count for retaliation. Counsel's failure to request leave to cure this obvious deficiency supports dismissal with prejudice, *See* Foman v. Davis, 371 U.S. 178, 182 (1962), but, as discussed above, plaintiff will have leave to amend. Id. However, given the history of this case, it is unlikely that I will grant further amendments.

[22] That is not to say that a count for retaliation is actionable against all remaining defendants. Prior to filing the second amended complaint, counsel shall familiarize himself with the law of § 1983 and tailor his allegations to viable defendants only.

### G.  Count 8 – Negligent/Intentional Infliction of Emotional Distress

Count 8 asserts claims for both intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED). To proceed on a theory of IIED, Mr. Davis must plead that defendants acted with extreme or outrageous conduct to intentionally or recklessly cause severe emotional distress. Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 890 (3d Cir. 1998) (predicting that the Pennsylvania Supreme court would adopt § 46 of the Restatement (Second) of Torts). To be actionable as IIED, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citing Restatement (Second) of Torts § 46 cmt. D). The amended complaint is devoid of any allegation of extreme or outrageous conduct. Rather, defendants mistakenly believed that Mr. Davis was HIV positive and provided appropriate medical care given this diagnosis. At best, these allegations sound in negligence. The allegations do not exhibit the type of intentional conduct necessary to sustain an IIED claim. Accordingly, I will dismiss Count 8 without prejudice. The second amended complaint may include a cause of action for NIED which I turn to next.

It appears that Mr. Davis's NIED claim stems from the breach of his patient – doctor relationship.[23] The Pennsylvania Superior Court has found that an NIED claim can

---

[23] The Pennsylvania Supreme Court has recognized three additional NIED claims. A plaintiff can recover for NIED when: 1.) plaintiff suffers a physical injury which causes the emotional distress, See Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 992 (1987) (collecting cases); 2.) plaintiff did not suffer a personal impact but was in the zone of danger, Niederman v. Brodsky, 261 A.2d 84 (Pa. 1970); or 3.) plaintiff witnesses an accident causing serious injury to a close family member. Sinn v. Burd, 404 A.2d 672 (1979). The amended complaint does not support an NIED claim under these alternative theories.

be based on the breach of a special relationship. <u>Toney v. Chester County Hosp.</u>, 961 A.2d 192 (Pa. Super 2008). An evenly divided Supreme Court affirmed the decision.[24] <u>Toney</u>, 36 A.3d 83 (Pa. 2011). Based on my review of these two opinions, I predict that the Pennsylvania Supreme Court will eventually extend NIED liability to the breach of special relationships. *See* <u>Weiley v. Albert Einstein Med. Ctr.</u>, 51 A.3d 202, 217 n. 16 (Pa. Super. Ct. 2012) (noting the continued viability of NIED liability based on the breach of a special relationship). However, the Supreme Court will "limit the reach of this NIED claim to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach." <u>Toney</u>, 36 A.3d 83, 95 (Pa. 2011). Further, the Supreme Court will require the plaintiff to plead a physical manifestation of the emotional distress. *See* <u>Toney</u>, 36 A.3d 83, 95 (Pa. 2011) ("we would hold that some relationships … will involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm.").

 Mr. Davis contends that he suffered extreme emotional distress when correctional officers and other inmates learned of his false HIV diagnosis. Am. Compl. ¶ 128. Mr. Davis's relationship with his doctors is the type of relationship, the breach of which, will

---

Mr. Davis also suggests that defendants knew that, "subjecting Mr. Davis to unneeded HIV+ mediations … [and] forced blood withdrawal medical procedures by stabbing him with a needle would cause him harm." However, there are no allegations in the amended complaint that these actions caused emotional distress. Rather, the amended complaint alleges that he suffered emotional distress when the prison population learned of his false HIV diagnosis. In any event, it is simply implausible that a person would suffer emotional distress from the prick of a needle. Furthermore, any depression caused by the HIV medication would, at best, support a claim for medical malpractice or products liability.

[24] Since the court was evenly divided, the Supreme Court's opinion in <u>Toney</u> is not precedential. <u>Weiley v. Albert Einstein Med. Ctr.</u>, 51 A.3d 202, 217 n. 16 (Pa. Super. Ct. 2012) (citing <u>Commonwealth v. Dorman</u>, 547 A.2d 757, 761 (Pa. Super. Ct. 1988)). Thus, the Supreme Court has not yet ruled on the viability of a NIED lawsuit based on the breach of a special relationship.

support an NIED claim. Toney, 36 A.3d 83, 95 (Pa. 2011) (citing the doctor patient relationship as an example of a relationship with an implied duty to care for a plaintiff's well being). Mr. Davis alleges that his doctors breached the relationship when they released his HIV misdiagnosis to correctional officers and other inmates. I can only imagine the visceral and devastating effect of being branded HIV positive within a prison population. Mr. Davis has pleaded enough facts to pursue an NIED claim.[25]

However, Mr. Davis may not pursue an NIED claim against all defendants. The Pennsylvania Supreme Court has been extremely cautious when extending NIED liability. I have determined that the Supreme Court would extend liability to the doctor-patient relationship. I see no other special relationships in the amended complaint which would support an NIED claim, and I will dismiss Count 8 with prejudice as to the non-medical personnel[26] defendants.[27] I will also dismiss Count 8 without prejudice as to Dr. Eke Kalu, Dr. Joseph Korszniak and Dr. Bruce Blatt. While these three defendants are medical personnel, there are no allegations in the complaint to suggest that these

---

[25] Causation may be too attenuated to support an NIED claim. The doctors released Mr. Davis's misdiagnosis. Then, the prisoners and correctional officers ridiculed and harassed Mr. Davis. Mr. Davis alleges he suffered emotional distress from this harassment. He did not actually suffer emotional distress from the release of the misdiagnosis. However, it would be inappropriate to dismiss an NIED claim on lack of causation. Love v. Cramer, 414 Pa. Super. 231, 237, 606 A.2d 1175, 1178 (1992) ("Although appellant may be unable to ultimately prove a causal connection between her injuries and the doctor's alleged negligence, she should at least be given the opportunity to do so."). In any event, defendants' motions do not address causation.

[26] In applying Toney, at least one court has found that a special relationship existed between an EMS technician and his patient. Mulawka v. Pennsylvania, 11-CV-1651, 2013 WL 171911 (W.D. Pa. Jan. 16, 2013). Accordingly, I believe that a special relationship can exist between a patient and medical personnel who are not doctors.

[27] These defendants are: Philadelphia, Louis Giorla, Bruce Herdman, John Wetzel, Christopher Oppman, Michael Wenerowicz, Laurel Harry and Vincent Mooney.

defendants ever met Mr. Davis, and I do not see how they could have established a doctor-patient relationship.[28]

## H.  Miscellaneous issues

Mr. Davis may not sue the Commonwealth defendants in their official capacities. Suing state employees in their official capacity is the same as suing the Commonwealth of Pennsylvania. *See* Kentucky v. Graham, 473 U.S. 159, 165-66 ( 1985). It is well established that a citizen may not sue a state in federal court unless the state consents to suit or Congress abrogates the state's Eleventh Amendment immunity. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996) (citations omitted). Pennsylvania has not consented to suit in Federal court. 42 Pa. C.S. §8521(b). Congress has not abrogated Pennsylvania's sovereign immunity from state law tort claims. *See* Blanciak, 77 F.3d at 695 (noting that Congress's may only abrogate Eleventh Amendment immunity to enforce the prohibitions of the Fourteenth Amendment and to regulate interstate commercial activity). Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [liable] under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). I will dismiss with prejudice all claims against the Commonwealth defendants acting in their official capacities.

As I am dismissing the amended complaint, I will not address the Corizon defendants' motion for a more definitive statement and their motion to strike portions of

---

[28] The Commonwealth argues that its agents are immune from NIED suits. The General Assembly has not waived immunity from NIED. 42 Pa.C.S. § 8522. However, a Commonwealth party who is a healthcare employee may be liable for medical malpractice. §8522(b)(2). It is not clear whether a Commonwealth party is liable for emotional distress resulting from medical malpractice. The Commonwealth may re-brief this issue in a future motion.

the amended complaint. I also find it premature to dismiss plaintiff's demand for punitive damages. Defendants can challenge punitive damages on the basis of a complete record.

**IV.    Conclusion**

For the foregoing reason, I will grant the defendants' motions in part.

An appropriate order follows.